thank you your honor and good morning may it please the court Cheryl Gordon MacLeod on behalf of Thu Nguyen and I'm joined at council table by co-counsel mr. Mistel your honor there was one piece of evidence in this case that was qualitatively different from the paper trail from the medical probes from the Davies claims that he was selling to Thu Nguyen rather than to it Nguyen and it was the words of co-defendant Cess Merck saying that he was selling medical devices illegally stolen medical devices to Thu Nguyen my aim this morning is to focus on the Crawford problem posed by the admission of those statements and the Santos problem posed by the money laundering conviction okay am I correct that if there's a Crawford violation and the convictions for possessing stolen property for conspiring to possess it and for money laundering all have to be reversed that's my understanding that the conviction for a violation that's not harmless I'm sorry if there's a violation that is not harmless there correct that my understanding is that they would all fall the two conspiracy charges the interstate transportation of stolen property charge and the two introduction of misbranded medical but the Crawford issue would not vitiate if it succeeds would not vitiate the misbranding convictions in other words that I understand the question I'm sorry I'm she was also convicted of introducing devices into foreign commerce misbranded or into national commerce and my understanding is changing serial numbers right well my thought was that the Crawford issue doesn't relate to that so if it does you better well I apologize but I'm going to be thinking about out loud on that one too the misbranding elements are that it was a device that it was misbranded attempted to fraud or mislead you know I think you don't have anything to do with whether it was stolen property I think you why don't you think about it and you can cover it in your rebuttal thank you I would add to that though that remember that we have the problem on the misbranding instructions in that they left out the element of materiality the government agrees that materiality no I understand that okay that's another issue okay that is another issue I'm just trying to figure out how far we go with the appellant if we accept the Crawford violation I and I convictions and I don't have an answer for you at the moment about those as to all the other convictions though Crawford barred the admission of non-testifying co-defendant sesmeric testimony because they were testimonial statements elicited during the course of a criminal investigation by a federal special agent and they were admitted over defendants repeated motions in this because the standard of review here is could be significant so maybe you could read review with us my understanding is that the appellant objected to the statement the hearsay statement motion in lemon and after oral argument after the opening statement and that the judge said she didn't have to further object that it was preserved but then did not object when the testimony came in that's correct but I'd like to add to that that the initial motion in limine which is in the ER and I cited to page 199 which I believe was the hearsay objection I should also have cited to ER 208 which is the page at which the actual confrontation clause objection appears and that it's written in broad statements as an objection to the admission of this evidence now it begins by saying we've been alerted by that the government may be seeking to introduce it it doesn't say we've been alerted that sesmeric may be seeking to introduce it the reason of course is that Merck never alerted anybody and the motion in limine is what people bring to the trial court based on what they know in advance of trial but the relief requested was broad the relief requested was exclusion of Merck's testimony implicating to it new in it didn't say excluded only if the government admits it thereafter of course there was the first trial was which mr. requesting house gave the opening statement that was on March 13th I'm sorry on March 13th in court judge lasnik said I'm gonna deny your motion to exclude those I think there's a conspiracy here I don't want anybody to cross the Bruton line but I think there's a conspiracy here so I'm going to deny mr. mistel your motion well then there was an opening statement in which government counsel referred to Merck's statements specifically pointing to to it new and receiving probes in exchange for money a week later March 20th we're back at a what was Merck's counsel strategy in doing that well that's a good question and blame her it's a good question and I say that because it's one that couldn't have been predicted in advance of trial other one otherwise we might all be blaming mr. mistel for not having raised it in his motion in limine the best I can figure out is that he was trying to get his client across as an honest guy who came forward but that's the best that I can do with it to further answer your question judge Gould defense counsel re-raised it immediately before the second trial and said you know an opening statement in the first trial government counsel specifically used Merck's words introduced through agent Wharton to inculcate my client to it new in this is a problem because to it new in gave a statement that was so it directly contradicts her it's a confrontation clause violation and your honor he said to judge lasnik I didn't object because you told me I had a continuing objection am I getting that right and the judge responded at er 152 yes I agree with you and I'm granting you a continuing objection in that regard so then fast forward to when the statements come in through Merck's counsel's cross-examination no objection because we have a continuing objection already in that regard and the only other rule I think we have to look at is the federal rule of evidence which I didn't write down here but it's in my brief I think it's 103 which says that after a decision by the district court admitting or excluding evidence close quote there's no need to re-raise the objection at the trial at the time that the evidence is either admitted or excluded you know the government raises a whole raft of anti Crawford arguments including saying that the statement was exculpatory was it exculpatory falsehood it wasn't offered for truth what's your response to those to the arguments on the Crawford merits I'd like to talk about whether it was a falsely exculpatory statement that was admitted for something other than the truth your honor because if it was it's something that nobody ever clued the jury into and in fact if you look at the government's theory of the case it was neither false nor exculpatory in the statement Merck did not deny stealing probes for money he admitted receiving money for medical devices that's a quote from his statement medical devices he never limited the medical devices that he received money for to scrap circuit boards as the government seems to suggest he never denied receiving the half million dollars that the agent brought up instead he said he said I admit taking medical devices from ATL Phillips I admit selling them to both of the new ends and getting paid for them so as a factual matter it was neither false according to the government's theory nor exculpatory but I want to talk about it as a legal matter also how did the government argue that okay the statement that came in how did the government if it wasn't for the how did the government use those statements in their argument what did they say that that meant when they were arguing their case they argued that to it new in received stolen probes for money and did they specifically ever in their argument in the record say and this is how we know it because look at what mr. Merck said I don't know the answer to that question your honor and if I can't find it on rebuttal if the court would permit me to submit something say tomorrow that's all right but the key is that this was different from anything else that would allow them to say this because Merck's was the only direct testimony on it the rest was kind of a paper chase a paper trail it was it's I guess but direct and circumstantial evidence I mean we all know that instruction that we don't understand that says circumstantial is just as good as direct I mean I read it for 20 years and then finally one day the light went on but so I mean the fact that this is the only direct and there's other circumstantial I mean it really comes down to whether if if we accept your argument that it was error and if we accept that it was preserved and then it's it's beyond a reasonable doubt would be the standard it really goes to how much other evidence there was right in terms of what what the effect of the error was oh you're certainly entitled so just the fact that one's direct and there's I mean circumstantial evidence can be some of the strongest cases sometimes correct but I don't agree that it depends on just how much how much other evidence there was certainly quality yeah I mean if it's beyond it whether it's an overwhelming case let's say agreed why don't you want to address the legal my benefit your argument is to why all the other circumstantial evidence taken as a whole isn't enough Crawford violation harmless beyond a reasonable doubt I would like to do that if you permit me I'd like to give the final portion of my answer to your last question which is false whether it's falsely exculpatory and therefore not hearsay and I'd like to say that there's a legal answer to that as well because Crawford says that it's sometimes possible to admit this stuff if it's not being admitted for the truth of the matter it cites though to Tennessee versus Street Tennessee versus Street is a really limited US Supreme Court case which held that a confession that was admitted in that case was not violate and admitted in violation of the confrontation clause even though it was the co-defendants confession because it was not admitted for the truth of the matter but the specifics of that case were that it was a case where the defendant was arguing that he was coerced into making a copycat confession something that tracked the other guys confession so the government was then permitted to introduce the other guys confession to show that it didn't track it the question in that case was what did the confession say the question in our case is not what did Murph's confession say the question in our case is what actually happened at the time of the thefts so I think there's a legal argument against construing this as something that was not admitted for the truth value either your question your following question is comparing the evidence that was admitted other than Murph's statements that he was selling directly there was a lot of other evidence admitted there were the material the checks right the checks to cash correct in fact if you look if you look at the government's brief I think on page 11 I was going to get to this in the Santos argument they summarize the three categories of checks that were written checks written that say Merck and probes checks written that just say probes checks written that went into the personal account and then money went out of the personal account material transfer forms testimony of Davies which implicated Fu Nguyen rather than Thuy Nguyen so there was a lot of paperwork a lot of checks a lot of notations showing money going around in a circle I agree with Judge Callahan that there was quantity I disagree that it was of the same quality as direct evidence out of Murph's mouth explaining what was going on and Merck is more than likely to have pointed to Davies or anybody else because he was the one who was pointed to it by the government as having been involved in this for the longest period of time and having supplied them with I believe half a million dollars worth of probes and Merck didn't testify right Merck did not testify so there wasn't any opportunity there is nobody to cross-examine it all came in through special agent Gordon sometime before you're done you should at least touch on the misbranding please you know to get you into the issue of concern to me it seems to me that that probably there is precedent saying that materiality is an element but yet here it seems so obviously material that serial numbers have changed the obvious in terms of other testimony that I'm having trouble seeing how not giving that element as part of the charge would affect substantial rights of miss when well I think it's undisputed at this point that materiality is an element I think the government admits this at page 41 of their brief I think they also admit that the to convict the elements instruction lacks this element and I think it's pretty clear that jury instruction number 30 which says that it's one among many items that you can consider makes it a consideration not a required address if you would please how not instructing on materiality affects the substantial rights of miss win in light of the other evidence well the question is what's the material whether it's important that there was a different number on the outside than there was on the inside when the inside number was accessible as well the government's theory was that the outside number mattered primarily in the event that there was a recall and of course there was no evidence of any recall the defense however presented evidence that it was really not material at all to anybody that it was not a unique number in the early numbering system they were duplicated that it was primarily an inventory control number so it might be important to ATL Philips in terms of tracking stuff but it wasn't material to any of the customers exactly what the number was in terms of quality or whether it was going to help or hurt patients and that for a number of these probes they were basically Nixon match probes so the outside number really was of limited value anyway because it they fixed them by taking you know taking a little bit from this probe and taking a little bit of that from that probe and putting it in so the outside numbers are any obliterated serial numbers if any obliterated serial numbers I think it would be you'd be hard-pressed if you surveyed a hundred people I think what if you ask people what do you think they'd say it's stolen well the question isn't whether it's stolen the question whether obliteration is material and to the purchaser what was material was quality to ATL Philips what they cared about was don't you think you might care if it was stolen they might care but they might not they might care primarily about material about quality and they were getting high quality so in terms of I think there's arguments on both sides I think that the key is that it's a jury question whether the government's argument that it's material primarily in the end of a recall which never occurred would have carried the day or defense argument that nobody cared since they knew that the stuff coming from the new is was consistently high quality and the stuff the number on the outside didn't really tell anybody what was on the inside since they were mix-and-match parts you've got a minute's left do you want to save some time for a bottle I want to spend about one minute on Santos well I need a little time too I need to ask one quick question and as you know I know we well I just wanted to ask you a quick question so that I understand you questioned about for resentencing on the loss because you said the district court didn't rule on factual objections correct all right if I agreed with that is it possible that she could go back and get more get a higher number my argument would be no based on North Carolina versus Pierce which holds that you can't punish the defendant of course I'll bet for filing but what the court said here was I'm just gonna give you a little break and kind of cut you a little slack and go down but now the appellate court says sorry you can't cut people slack without going through all the numbers and you got to come up with it in a reason way that's not punishing someone on an that's like they're following the appellate court that's not an issue that was raised on appeal there was no cross appeal on whether her sentence was too low your honor so she could get more time maybe I mean we're more loss but even I think the answer is that this court cannot write opinion saying that she should get more time because the numbers were too low because that was not an issue that was raised by me on appeal and there was no cross appeal by the government if part of the center if part of the findings for the court was set aside on rulings on the evidentiary problem the court could even if we sent it back for resentencing the court could reimpose the original sentence couldn't it yes your honor so you're not ahead much except counts right well I think I might be ahead if we did a resentencing okay I think there's I you know I'm often in this position and sometimes there's things that you think of it sentencing and sometimes perhaps the comparison with what her husband did and sometimes perhaps how she's been behaving since the conviction irrelevant have to deal with it but I sure worry that attorneys don't worry about it sometimes I'm sorry say it again I don't worry about it in connection with my work but I do worry about attorneys that don't think about it before they come up here I appreciate that your honor and I understand that the district court could certainly impose the same sentence as a legal matter it was a calculated risk here thank you your honor I see that my time has expired I'm making a habit of it today we'll give you an extra one minute for about thank you your honor okay miss miss Lutz thank you may it please the court my name is Susan Lloyd's I was one of trial counsel in this matter going straight to the Crawford Bruton related issue I think it is significant that this was raised by these questions were raised by mr. Merck's counsel and I why is that significant you know what putting aside of whether it might be harmless under Chapman but just as to whether it's a Crawford violation if we have testimony by a government agent that mr. Merck said she bought stolen goods from him now why isn't that like a classic violation well I think the issue your honor is that by and I would disagree with what counsel said that mr. Merck's counsel did not make it known that he was going to take this position a week before this trial started he told everybody in the courtroom that his client was going to admit that he had stolen probes or he had stolen goods he equated it to a hundred and fifty thousand dollars in his account that's not scrap material that would have to be probes she did not move to sever that's really the difference is that here she either had to make it very clear under appropriately say that there were inconsistent defenses and ask for severance of the trial and she never did that didn't ask for severance but why would that be a defense if there is a Crawford violation well I would say that she did waive it but let's say that you determine that she didn't waive it the standard then is did it result in a problem in the trial and here I would also make it this testimony at trial had nothing to do with probes there were two statements that he gave that's what I just where I don't follow you at all and I suppose it's just not having traction with me at all I don't see where I it doesn't appear to me that they they waive the objection but also but I'm listening to everything I don't that this theory that you you're saying it's not coming in for the truth of the matter I I just I absolutely I was a prosecutor for a long time and I absolutely I'm just it's not getting traction with me well I think the difference I want to make is that it's not about probes which is what the trial was about he did admit to taking some material and selling it to the new ends so there were stolen items or stolen equipment what he said was scrap scrap material and I think that's substantively different than stolen probes which was what all of the counts were about well he didn't admit to if you read the testimony of the agent and it was covered by mr. Mistel and cross-examination did he admit to probes and it's very clear that he did not admit to stealing probes and that's what the trial was about the agent use some general word like equipment or items that that would cover probes that's true so then what's the big deal well they're the agent said Merck said he sold stolen items to miss when then what does it matter if he didn't admit they were probes I guess the the difference that I would say that I think does make a difference it was scrap which I think is a minimalization of what he did because probes as we we talked about in the loss amount conservatively worth $8,000 piece how did the government argue this particular we definitely argued the reason we wanted this statement to come in into the limited amount that we did was because it was false and we were arguing that he lied about saying he only took scrap he wasn't admitting probes so why do you lie why do you lie you lie because you want to cover up what you've really done the same thing with respect it's just directly on point as to her knowledge I did you argue that in the trial I'm sorry did you argue in the trial that that showed that she had knowledge I don't think we argued that as to her knowledge our focus was on the checks that she wrote the difference in the inventory forms that showed or their inventory records that showed that they did not have they could not track a bunch of their inventory for example mr. Merck is not listed on the vendor lists so her knowledge there her particularly the signing of the checks was significant the denial that she had done any business with him which was her statement that came in during the trial all of that was her knowledge how did you address those issues in terms of the Chapman harmless beyond a reasonable doubt standard if we decide it was a Crawford violation I think that is certainly the way the court can decide this case there was powerful and convincing evidence and you need to give me your best evidence on that I'd say my number one evidence are the checks to cash that mention purchasing probes most of them say probes from Merck but some of them say equipment she signed of those 112 checks she signed I think 46 of them something like that that means you have to go to the bank to get the checks I think that is evidence that she knew contrary to her lie to the police department that she in fact was buying probes from mr. Merck she and and then the accounting records also show that the vast difference between their purchases by item detail reports and their sales by item details they show a lot more record of sales than they show for purchases they're not keeping track of their purchases that are stolen property so I think under the harmless error standard the powerfully the powerful evidence shows that despite any argument that she could make with respect to mr. Merck's questioning the conviction should stand if we determine that there's a Crawford violation and if contrary to your argument we conclude there might have been some it's not beyond a reasonable doubt if there is such a violation that's not harmless which convictions fall well I would assume the conspiracy conviction and the and the stolen property convictions what about the money laundering well money property that was all too right correct and those could be retried that they would all be out the only thing left would be the misbranding I think that's right your honor so let's focus on the misbranding for a moment for my benefit all right as I understand it materiality is an element correct but what's the putting you under a plane air standard would support the conclusion that her substantial rights were not affected well I'd say let's start with the Supreme Court case particularly with respect to materiality the Supreme Court said in the nadir case that it's harmless if the reviewing court can conclude that the evidence proves the omitted element beyond a reasonable doubt and here I think we did that very clearly the changing of the serial numbers was a significant part of their effort to steal stolen property they were able to cover up that they were stealing stolen property by changing the serial numbers it clearly was material and it clearly was stated such by multiple of the witnesses we had three different customers who bought goods from Columbia Medical Systems who said that it was very material to them that the serial number be the original equipment manufacturing label which means its original serial number and it was put there by the manufacturer in this case Phillips in connection with that the witness from General Electric who is one of their biggest customers mr. Davis Parker mr. Parker testified that they stopped doing business with Columbia Medical Systems when they heard that there was a problem that they might be stealing probes when they went back to continue to do business with them after a year or so period of time they entered into a written contract and the written contract has in bold faith this has to be original equipment serial numbers so it clearly was material to the to the purchasers whether or not there was a recall or not I don't think matters because it was material in the event that a recall might have happened in the serial number and to two of their customers I think testified to that directly how does the material that the misbranding or that are the you know that the the second set of serial numbers how does that relate to the body of evidence in evaluating harmless error if you find a Crawford violation is that well I think the fact that there are false serial numbers on the probes is proof that they are stolen there really is no other reason to change in my view to change the serial number unless they are stolen so I think it is further proof that they were dealing in stolen property it was a way to facilitate the stolen property crime I'm sorry there is no other manufacturer of a probe no there are different types of probes General Electric actually I think produced their own but with respect to these particular labels the customers recognize them as Philips labels and it was a Philips brand and a Philips device that were at issue here so what did that what did it actually look like when you would have these two serial numbers the only serial number that a customer would see is the outside label which is what looked like the Philips label but had in the case of the stolen probes a false serial number they used the same color they used the same configuration of you know kind of how it looked but they were false they were false you could tell in two different ways it was a comparison of the serial number when we actually physically had the probe because you needed to do this but to run the computer test that would show you the computer embedded serial number and you could do that if you physically had the probe so we were limited in how many of those we could prove that way and if they were different then the exterior label was false with respect to the probes at issue here which were newer label probes with respect to another way they could you could tell that they were false is at least some of them is the configuration of certain numbers and letters that were not allowed in the Philips serial number system that when the Nguyen's created a false label they used some of those characters that were verboten under the real serial number system and so we had a summary at the end of the trial of probes that were false numbers and they were done in two different ways they were done by that comparison of the internal versus the external and also by violating the Philips labeling system. Well there was also evidence in the trial that obviously the Nguyen's had previously worked for Philips. Correct. And knew Mr. Merck. With respect to the money laundering jury instruction I wanted to point out one additional thing and that is the general knowledge instruction in the Stein case is significantly different than what we had at issue here. In both the Stein case and in this case the that instruction started off by saying an act is done knowingly if the defendant is aware of the act and does not act through ignorance mistake or accident. That's in both Stein and here. In Stein, however, there was an additional sentence that said the government is not required to prove that the defendant knew that his acts or omissions were unlawful. That's what the problem was in the Stein case. We did not have that sentence in this case. And in fact, the very next jury instruction following the general knowledge jury instruction specifically addressed that in order to find that she acted knowingly you had to find beyond a reasonable doubt that she was aware of a high probability that the probes were stolen and deliberately avoided learning the truth and that you couldn't find that she had the knowledge if she acted if she believed that the probes were not stolen. So it's really completely the opposite situation that was present in Stein. With respect to the sentencing disparity issue, I wanted to point out that section the section of 3553 that's applicable here is A6 and it says that you are to avoid that you are one of the goals is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. And here, Mr. Nguyen pled guilty only to the money laundering conspiracy. She was found guilty of three additional types of crimes and six more counts than her husband. And that, I believe, is what the Court was addressing when he went through the various different factors in sentencing. Is there any other particular issue that the Court would like me to address? I don't have anything to add. Can I interrupt you, please? I think so, Ms. Lloyds. Thank you. We appreciate your argument for us. Thank you. Ms. McLeod, we give you an extra minute here. Thank you, Your Honor. I'll talk quickly. Counsel for the government said that Mr. Merck's counsel alerted the Court in advance of the trial that he would admit Mr. Merck's testimony. So we should have objected prior to that. Well, when counsel alerts the Court that they're going to admit Mr. Merck's testimony, you expect the guy to testify. That was what the alert was. Merck didn't testify. Instead, it was elicited through Agent Gordon. So I don't think that that was a clue that there was going to be a Crawford problem coming through Seth Merck rather than the government. With regard to the misbranding, I think I agree with the Court's analysis as to the reach of the Crawford error and that the misbranding convictions are going to have to stand or fall on the omission of the materiality issue. With regard to the materiality issue, I would only add the jury actually acquitted Thuit Nguyen of ten counts, including, I think, three of the misbranding counts. So it's not like they – it's not like there was overwhelming evidence, at least as far as the jury saw it. And I've gone over my overtime. Okay. Well, thank you very much. Thank you, Your Honor. I appreciate the excellent argument on both sides. I agree. Thank you both for the argument. U.S. v. Nguyen shall be submitted.
judges: Beezer, Gould, Callahan